**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Marcia S. Krieger**

**Civil Action No. 17-cv-01034-MSK-KLM**

**PATRICK G., by and through his parents and next friends, Stephanie G. and Daniel G.,**

        **Plaintiff,**

**v.**

**HARRISON SCHOOL DISTRICT NO. 2,**

        **Defendant.**

---

## OPINION AND ORDER ON ADMINISTRATIVE APPEAL

---

        **THIS MATTER** comes before the Court pursuant to Plaintiff's appeal of the decision of an Administrative Law Judge ("ALJ") and request for attorney fees **(# 1)**.   Upon the Court's consideration of the parties' arguments **(# 27 - # 29)** and supplemental briefing **(# 30 - 33, # 35 - 38, # 51 - 54)** presented in light of the Administrative Record **(# 20)**, this appeal is DISMISSED as moot.

## I.        JURISDICTION

        The Court has jurisdiction over an appeal from a final decision of the Colorado Office of Administrative Courts under 20 U.S.C. § 1415(i)(2)(A) and over claims presenting a federal question under 28 U.S.C. § 1331.

1

## II.    BACKGROUND[1]

Though the parties have a lengthy history of disputes over the educational services at

issue in this case, the Court only recounts the facts relevant to the limited issue on appeal.[2]

Plaintiff Patrick is a minor child enrolled in the Defendant Harrison School District # 2

(the District).   Patrick has been diagnosed with an autism spectrum disorder and speech delay,

both of which entitle him to special education and related services.   (**# 20 at 152-153**).

In 2013, when Patrick was 12 years old, he moved to Colorado Springs from

Pennsylvania.   His mother met with District personnel.   In conformance with the Individuals

with Disabilities Education Act ("IDEA")[3], the District placed Patrick at Alpine, a private

behavioral facility in Colorado Springs (**# 20 at 153-154**).   In April 2014, Patrick's IEP team

convened, and the District proposed moving Patrick from Alpine to an unspecified public school

for the following school year.   (**# 20 at 155**).   Patrick's parents and the parents of three other

---

[1]   The Court recounts the facts as stated in the administrative decision (**# 20 at 152-175**), giving due weight to factual findings, and supplementing them by references to the record. *See L.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004). For ease of reference, common acronyms are used by the parties and the Court. The IDEA is the Individuals with Disabilities in Education Act. A FAPE is a Free Appropriate Public Education. An IEP is an Independent Education Plan.

[2]   The Court understands that this challenge is limited to the ALJ's ruling that the 2016 IEP was reasonably calculated to provide Patrick with a FAPE and a request for attorney fees.

[3]   It is undisputed the IDEA requires that Colorado provide a free appropriate public education (FAPE) to all eligible children. 20 U.S.C. § 1412(a)(1). A FAPE includes both special-education instruction and related services to assist in the child's benefit from instruction. 20 U.S.C. § 1401(9), (26), & (29). Such instruction and services are memorialized in the child's IEP, developed in a collaborative process involving both parents and educators. 20 U.S.C. §§ 1401(9)(D), 1414.

children[4] who were similarly situated filed a joint complaint with the Colorado Department of

Education.   The State Complaints Officer ("SCO") ruled in favor of the parents and prohibited

the District from changing the students' school placement until it fulfilled a number of IDEA

requirements.   Thus, Patrick remained enrolled at Alpine.   **(# 20 at 154-155)**.

In April of 2015, the District informed Patrick's parents that it needed to conduct the

IDEA required triennial review of Patrick's educational needs and eligibility to receive special

education services.   Patrick's triennial review occurred in October and November 2015 and

included a comprehensive battery of assessments conducted by District employees at Alpine.

**(#20 at 155-159)**.

Patrick's IEP team met in both January and May 2016, discussed the evaluations and

weighed the advantages and disadvantages of moving Patrick's placement from Alpine to

Mountain Vista, a public school.   **(# 20 at 160-164)**.   The team determined that Patrick should

be placed at Mountain Vista where he would receive specialized, small-group, social and

academic instruction in the special education classroom and where he would have access to a

general education classroom to practice social skills.   **(# 20 at 163-164)**.   Patrick's mother

opposed this placement.

On May 20, 2016, the District discontinued its payments to Alpine.   Patrick continues to

attend Alpine; his tuition payments are covered by his parents' insurance provider, TRICARE.

The parents pay a $35 monthly premium to TRICARE.   **(# 20 at 166-167)**.

---

[4] The cases involving two of the other children – *Steven R.F.* and *Nathan M*. -- who were also
enrolled at Alpine are relevant here because both the facts are similar to Patrick's appeal and the
10th Circuit has recently issued decisions in those analogous cases as discussed *infra*.

Patrick's parents filed a due process complaint seeking to have Patrick remain at Alpine and receive reimbursement for such placement after May 2016.   **(# 20 at 167)**.   Upon consideration of the complaint and evidence presented at a hearing, an Administrative Law Judge (ALJ) held that the District's 2016 IEP offered Patrick a FAPE and thus, after May 2016, the District was not required to bear the cost of Patrick's attendance at Alpine.   For times prior to May 2016, the District was directed to reimburse Patrick's parents for the $35 monthly insurance premiums and any other amounts they expended for Patrick's tuition and additional services.[5] **(#20 at 175)**.

Patrick's parents now bring two claims – one for review and reversal of the ALJ's "adverse" determination pursuant to 20 U.S.C. §1415(C) and one for attorney fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I).   **(# 1)**.

After this appeal was fully briefed, the Court requested supplemental briefing from the parties in light of the 10th Circuit's recent decisions in *Stephen R.F. ex rel. Fernandez v. Harrison Sch. Dist. No. 2*, 924 F.3d 1309, 1310 (10th Cir. 2019) and *Nathan M. ex rel. Amanda M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, (10th Cir. 2019).   In those cases, the Tenth Circuit determined that similar IEP challenges from parents – who had children enrolled at Alpine and opposed the Harrison School District's decisions to place their children at other schools – were moot because the alleged IDEA violations were not capable of repetition absent review.

---

[5]  The ALJ also found that the District has discretion to include TRICARE as a payee on its reimbursement payment.   **(# 20 at 174-175)**.

### III.   LEGAL STANDARDS

States receiving federal funds for education must, among other things, provide a free

appropriate public education (FAPE) to all eligible children.   20 U.S.C. § 1412(a)(1).   A FAPE

includes special-education instruction and related services to assist in the child's benefit from

instruction. 20 U.S.C. § 1401(9), (26), & (29).   Such instruction and services are

memorialized in the child's individualized education program (IEP), which is to be developed in

a collaborative process involving both parents and educators.   20 U.S.C. §§ 1401(9)(D), 1414.

"The IEP is a written statement that sets forth the child's present performance level, goals and

objectives, specific services that will enable the child to meet those goals, and evaluation criteria

and procedures to determine whether the child has met the goals."   *Ass'n for Cmty Living v.*

*Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993).   The IEP is the means through which special

education and related services are "tailored to the unique needs" and circumstances of a

particular child — "the centerpiece of the statute's education delivery system for disabled

children."   *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1 (Endrew II)*, 137 S. Ct.

988, 999 (2017).

A FAPE has both substantive and procedural components.   The Court determines

whether the district complied with the IDEA's procedural requirements and whether the IEP

developed by those procedures is substantively adequate.   *Bd. of Educ. v. Rowley*, 458 U.S. 176,

206–07 (1982).   If a district meets both substantive and procedural requirements, it "has

complied with the obligations imposed by Congress and the courts can require no more." *Id*. at

207.   To "meet its substantive obligation under the IDEA, a school must offer an IEP

reasonably calculated to enable a child to make progress appropriate in light of the child's

circumstances."   *Endrew II*, 137 S. Ct. at 999.

For children not "fully integrated in the regular classroom and not able to achieve on

grade level", the IEP "must be appropriately ambitious in light of his circumstances, just as

advancement from grade to grade is appropriately ambitious for most children in the regular

classroom."   To be *reasonably calculated* to accomplish a particular objective requires "a

prospective judgment by school officials [and] contemplates that this fact-intensive exercise will

be informed not only by the expertise of school officials, but also by the input of the child's

parents or guardians."   Review of an IEP considers the question of whether the IEP is

reasonable, not whether it is ideal. *Id*. at 999–1000.

The IDEA does not require that an IEP "provide a child with a disability opportunities to

achieve academic success, attain self-sufficiency, and contribute to society that are substantially

equal to the opportunities afforded to children without disabilities."   The adequacy of a given

IEP turns on the unique circumstances of the child for whom it was created.   *Id*. at 1001.

## IV.   DISCUSSION

In light of recent 10th Circuit decisions *Steven R.F.* and *Nathan M.*, the Court first

addresses the threshold issue of mootness to determine whether it has subject matter jurisdiction

over this case.

### 1.  Mootness

The Court's jurisdiction under Article III extends only to "actual ongoing controversies."

*Honig v. Doe*, 484 U.S. 305, 317 (1988); *see McClendon v. City of Albuquerque*, 100 F.3d 863,

867 (10th Cir. 1996) ("[T]he existence of a live case or controversy is a constitutional

prerequisite to federal court jurisdiction.").   If an actual controversy ceases to exist at any stage

of litigation, the case has become moot and should be dismissed.   *Fischbach v. N.M. Activities Ass'n,* 38 F.3d 1159, 1160 (10th Cir. 1994) ("Generally, the actual controversy between the parties 'must exist at [all] stages of appellate or certiorari review, and not simply at the date the action is initiated.' " (quoting *Roe v. Wade*, 410 U.S. 113, 125 (1973)).

There are, however, exceptions to the mootness doctrine.   The four generally recognized exceptions are: (1) the plaintiff continues to have secondary or collateral injuries even after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an alleged illegal practice, but is free to resume it at any time; or (4) the action is a properly certified class action suit.   *See Riley v. INS*, 310 F.3d 1253, 1256–57 (10th Cir. 2002).   Relevant here is the second exception which applies to "certain cases [that] appear technically mooted, [but] are in reality live controversies because they will recur and again evade review."   *Nathan M.*, 942 F.3d at 1040.   "The capable-of-repetition, yet evading review exception applies in exceptional situations when (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again."   *Id.* (internal quotations marks and citations omitted).   The party asserting the exception bears the burden of establishing its application.   *Id.*

In cases like the instant appeal where the parents are challenging an IEP, the 10th Circuit has found the first prong of the exception "easily satisfied." *Id.*   IEPs are generally short-lived – lasting for only a single school year – and judicial review is not."   *Id.* (citing *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley* , 458 U.S. 176, 186 n.9 (1982).   Thus, the Court turns to the second prong – whether there is "a reasonable expectation that the same complaining

7

party would be subjected to the same action again". *Id.* at 1041. In the IDEA context, the *Steven R.F.* decision recently clarified the second prong's inquiry as "the likelihood that the specific IDEA violations alleged will be repeated." *Steven R.F.*, 924 F.3d at 1316.

### a. Steven R.F.

As in this appeal, *Steven R.F.* involved a child who suffers from autism placed at Alpine in 2013 by the Harrison School District. In 2016, the District convened an IEP meeting and determined to place Steven at a public school. *Id.* at 1311-1312. Steven's mother challenged specific procedural actions by the District in relation to Steven's 2016–2017 IEP. The SCO agreed with Steven's mother, and the District filed a due process complaint. An ALJ determined that placement at a public school provided Steven with a FAPE. Steven's mother appealed to this Court.

On appeal, the District Judge found that the District's various procedural violations constituted a denial of FAPE. The District appealed to the 10th Circuit Court of Appeals. The 10th Circuit found the appeal moot because the District's specific procedural violations did not fall into the exception of being capable-of-repetition but evading review. The Court stated "[n]othing suggests that these alleged procedural failures will be at issue in any subsequent IDEA challenge Mother brings. If we decided now, more than three years after the challenged actions, whether those alleged failures amounted to a violation of the IDEA, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct... . It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided." *Id.* at 1316 (internal quotation marks and citations omitted).

###### b.   *Nathan M.*

A few months later, the 10th Circuit issued a similar decision in *Nathan M.*   Nathan also suffers from autism, attended Alpine, and in 2016, the District developed an IEP that proposed moving Nathan to a public school.   Arguing in support of the capable-of-repetition exception to mootness, Nathan's parents attempted to distinguish their appeal from *Steven R.F.*, arguing that there were both procedural and substantive challenges (or fundamental disagreements as to what Nathan needs in a FAPE) to the 2016 IEP.   *Nathan M.*, 942 F.3d at 1042-43.   However, the 10th Circuit disagreed.   It held that in order to prove the capable-of-repetition exception, a parent must establish that it is "reasonably likely that the District will again violate the IDEA in the specific ways that [she] alleges it did in this case."   *Id.* at 1043.   General allegations that the District will deny a FAPE in the future are not sufficient.

###### c.   **This Action**

Given the caselaw in the Circuit, the question is whether Patrick's parents have established that it is reasonably likely that the District will commit the same alleged violations of the IDEA?

There is no dispute that this action is technically moot insofar as the 2016 IEP has concluded.   However, as in *Nathan M*, Patrick's parents allege that the District engaged in various procedural and substantive violations regarding Patrick's 2016 IEP which fall within the "capable-of-repetition but evading review" exception to mootness.   They contend that: (1) the IEP meeting did not include representatives from Alpine; (2) the District did not conduct an adequate reevaluation of Patrick; (3) a Mountain Vista special education teacher did not participate in the evaluations at Alpine; (4) the District had predetermined Patrick's placement

9

prior to the 2016 IEP meetings; (5) the 2016 IEP denies a FAPE due to the absence of a

behavioral intervention plan ("BIP"); (6) the 2016 IEP denies a FAPE in the least restrictive

environment; and (7) Patrick is entitled to compensatory services for speech, language and

occupational therapy.   For these alleged violations, Patrick's parents request relief in the form of

reimbursement by the District for the educational costs at Alpine and for private speech,

language and occupational therapy services.   (**# 20 at 1-3, 168-175**).

   *Nathan M*. teaches that each alleged violation must be considered with specificity, and

that for the "capable-of-repetition but evading review" exception to apply, the record must show

that there is a reasonable expectation that the same action will occur in the future.   In essence,

the record must show a defined, continuing controversy that must be resolved.

   The first four alleged violations appear to be procedural.   Patrick's parents do not cite to

anything in the record indicative that they are likely to be repeated, and thus in accordance with

the reasoning of the *Nathan M.* decision, they are moot.

   As to allegation (5), Patrick's parents do not identify why a future IEP would not include

a BIP.   Indeed, the record reflects that if Patrick demonstrated the need for a BIP in the future,

his 2016 IEP would be amended to add such services.   (**# 20 at 163**).   In support of the 2016

IEP's conclusion that Patrick did not require a BIP, the record reflects that both the Mountain

Vista school psychologist and the Mountain Vista social worker reported that not every student

with autism requires a BIP.   (**# 20 at 825:13-25-826**).   They observed Patrick's behaviors on

approximately five occasions and reported that his behaviors were not "aggressive" enough to

require a BIP.   "[H]is behaviors were very typical of a student with autism."   (**# 20 at 825:24-**
**25**).   The fact that no formal BIP was required did not mean that behavioral strategies would not

be used with Patrick at Mountain Vista.   **(# 20 at 831-832)**.   Indeed, many of the behavioral

accommodations included in Patrick's 2016 IEP are often included in a BIP.   **(# 20 at 896:17-**

**22)**.   Patrick's behavioral concerns were discussed, and the entire IEP team, including Patrick's

parents, "came to the consensus that [Patrick's concerns] could be met through accommodations

through his IEP because the behaviors were not seen to be continually like those aggressive-type

behaviors."   **(# 20 at 832:21-833:5)**.   However, should Patrick demonstrate the need for a BIP

once he was enrolled at Mountain Vista, one would be developed.   **(# 20 at 846:17-19)**.

The record shows that the District considered Patrick's behavioral needs both through

five observation sessions and the review of Patrick's history.   The IEP team explained in detail

why a BIP was not included in the 2016 IEP but that accommodations and other behavioral

strategies were included.   The IEP team also explained that it had the flexibility to add certain

accommodations and/or a BIP to the 2016 IEP should the need arise.   Patrick's parents do not

identify certain behaviors that the District failed to consider, much less explain why the

behavioral accommodations included in the 2016 IEP were insufficient.   Instead, the parents

seem to argue that since Patrick's 2014 IEP included a BIP, the 2016 IEP should as well.

However, the District states that based on the IEP team's observations and testing coupled with

statements from Alpine staff and Patrick's parents, Patrick's behavior challenges identified in the

2014 IEP had significantly improved by the time the 2016 IEP was developed.   **(# 20 at 933:5-**

**19)**.   Although Patrick's parents disagree with the BIP conclusion, there is nothing presented to

suggest that consideration of a BIP in the future would not occur, or that strategies to regulate his

behavior would not be employed.   Thus, this dispute appears to be a factual one limited to the

2016 IEP.

Allegation (6) is vague.   Patrick's parents do not specify why placement at Mountain

Vista denies Patrick a FAPE, and how this denial is likely to continue.   There is no doubt that

Alpine offers one-on-one therapy for children with autism, but no peer interaction.   **(# 20 at**

**154-155)**.   Mountain Vista offers a specialized autism program involving small group

instruction and exposure to typically developing peers.   **(# 20 at 163)**.   Again, although

Patrick's parents preferred that he attend Alpine, there is no showing that their disagreement with

the District will be a "continuing controversy" that presents legal questions rather than simply

fact specific challenges to the 2016 IEP.   *Nathan M.*, 92 F.3d at 1045.

Patrick's parents suggest that their dispute is an ongoing legal disagreement "based on

school district policy/philosophy that favors academic progress over behavioral progress" **(# 52**

**at 13).**   How the different philosophies play out, however, is fact-specific to a given IEP.   The

Court cannot speculate based on an expired IEP, how future IEPs might be formulated.   *See*

*Nathan M.*, 92 F.3d at 1045-46 ("Although Parent and the District may continue to lock horns

over Nathan's educational placement, their dispute has not sharpened into a specific legal

controversy that this court is capable of resolving. … Our decision on the merits of Nathan's

2016 IEP could have not effect in the real world.").   Under these circumstances, the Court finds

Patrick's parents have failed to establish that is reasonably likely that the District will commit the

same alleged violations of the IDEA at some point in the future.

Finally, in an effort to avoid dismissal of their challenge to the 2016 IEP placement as

moot, Patrick's parents offer their claim for recovery of monetary damages such as

reimbursement of educational and related services, attorney fees and injunctive relief[6] **(# 52 at**

--------------------------------------------------

[6]   On October 23, 2019, Patrick's parents filed a motion for a stay put injunction requiring the

**7**).  This request for relief requires a determination of the claims that are moot, and thus is also

moot.

There is no dispute that the IDEA entitles plaintiffs to reimbursement for services that a

school wrongfully failed to provide, and compensatory services[7] if a child has been denied a

FAPE.   *Moseley v. Bd. of Ed. of Albuquerque Pub. Sch.*, 483 F.3d 689, 693-94 (10th Cir 2007).

But the substantive claims which pertain only to the expired 2016 IEP are moot.[8]   As a

consequence, there is no monetary remedy to which Patrick's parents are entitled.   *See Nathan*

*M.*, 942 F.3d 1034 (citing *Lillbask ex rel. Mauclaire v. Conn. Dep't of Ed.*, 397 F.3d 77, 88 (2d

Cir. 2005) (case moot where school district conceded parents' position)).

As to an award of attorney fees, the request is predicated on 20 U.S.C §1415(i)(3)(B),

which requires Patrick's parents to be the prevailing party.   Such determination would require

---

District to maintain Patrick's placement at Alpine pending completion of this case. **(# 39)**.
Because this is based upon the substantive claims that are now moot, it too is moot, and therefore
denied.   Also, the District has agreed to pay for Patrick's tuition at Alpine and issued a check in
an undisputed amount for the time period from May 20, 2016 through February 28, 2017 payable
to both Patrick's parents and TRICARE.   **(# 20 at 166-167**)**.**

7 As the 10th Circuit notes in *Moseley*, most circuits hold that the IDEA does not permit
compensatory damages, *see Diaz–Fonseca v. Puerto Rico,* 451 F.3d 13, 28 (1st Cir. 2006); *Gean*
*v. Hattaway,* 330 F.3d 758, 774 (6th Cir. 2003); *Sellers v. Sch. Bd.,* 141 F.3d 524, 526–27 (4th
Cir. 1998); *Charlie F. v. Bd. of Educ.,* 98 F.3d 989, 991 (7th Cir. 1996); *Heidemann v. Rother,*
84 F.3d 1021, 1033 (8th Cir. 1996), a plaintiff may recover compensatory damages under § 504
and Title II in certain circumstances, *see Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153
(10th Cir. 1999) (holding that compensatory damages are available under § 504 upon a showing
of intentional discrimination); *Davoll v. Webb,* 194 F.3d 1116, 1141 (10th Cir. 1999)
(suggesting, but not explicitly holding, that proof of intentional discrimination is required for
compensatory damages under Title II).   In this case, no request is made on these grounds.

8 Indeed, as noted above, the pending request for a "stay put" order **(# 39)** to continue Patrick's
placement at Alpine is moot because it is premised on the substantive claims previously
addressed.

the determination of the merits of moot claims, and thus no attorney fees and costs can be awarded.   *See Moseley*, 483 F.3d at 693-94; *Bd. of Education of Oak Park v. Nathan R. ex rel. Richard R.*, 199 F.3d 377, 381 (7th Cir. 2000).

Finding that all claims asserted in this action are moot, it is **DISMISSED.**   The Clerk of the Court shall close the case.

Dated this 2nd day of October, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge

14